IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

KEITH JONES                                                                                           PLAINTIFF

v.                                          NO. 2:06CV00214 JLH

CITY OF STUTTGART, ARKANSAS, *et al.*                                        DEFENDANTS

**OPINION AND ORDER**

Keith Jones brought claims for violation of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against the City of Stuttgart, Arkansas, and against Chief Michael Smith, Sergeant Jason Sandine, and patrolman Jeff Childers of the Stuttgart Police Department in their individual capacities. Jones was unlawfully arrested by Childers. He claims that the other defendants are liable for failure to train and supervise Childers as a patrolman. The City of Stuttgart, Smith, and Sandine have moved for summary judgment, which Jones opposes. For the following reasons, the motion is granted.

**I.**

On December 30, 2005, Officer Jeff Childers learned that there was a warrant for the arrest of Keith Harris. Jerry Rone, the jailer, told Childers that he might locate Harris at the post office, although there is conflicting testimony about whether Rone said that Harris worked at the post office or that he had seen Harris at the post office. Childers then asked Sandine for permission to go to the post office to arrest Harris. Before he left, Sandine instructed Childers to make sure he had an active warrant for Keith Harris's arrest before making contact with anyone at the post office. Sandine also told Childers to make sure that he arrested the person described in the arrest warrant.

At approximately 9:17 a.m., Childers arrived at the post office. At 9:18, Childers called dispatch on the radio with a 10-29 to inquire whether there was an active warrant for Keith Harris (although Jones disputes that 10-29 means a check for a stolen vehicle), and the dispatch returned the call with a "10-53," which showed that there was an active warrant for Keith Harris's arrest. Officer Childers went into the post office to talk with Keith Harris, but instead he talked to Keith Jones. Keith Jones properly identified himself to Childers and was wearing a badge with his name, picture, and date of birth, but Childers adhered to his mistaken belief that Jones was Keith Harris.

At 9:25 a.m., Childers called dispatch on the radio with a "10-51," which the defendants identify as a person check, although Jones says the policy manual says the meaning is "request NCIC want on _____." Childers provided Keith Jones's race, sex, and date of birth. Childers mistakenly put Jones in handcuffs, believing he was putting Keith Harris in handcuffs, and called dispatch at 9:28 a.m. to say he had one in custody. Sandine was listening to the radio as Childers was calling in throughout the morning. When Sandine heard Childers run the name Keith Jones instead of Keith Harris, he started trying to call Childers's cell phone. By the time Sandine reached Childers, Childers had taken Jones outside the post office to the patrol car. When Childers answered his cell phone, Sandine informed him that he had not arrested Keith Harris and instructed Childers to release Jones from the handcuffs and apologize. At about 9:36 a.m., Childers left the post office. That day, Smith learned that Keith Jones complained about Childers's actions at the post office. After Smith investigated the events through Jones and Childers, he suspended Childers for four days without pay.

Jeff Childers began his career in law enforcement in the Stuttgart Police Department on or about August 15, 2005. He was terminated on March 23, 2006. The Stuttgart Police Department requires its patrol officers to complete a basic police training course; and the Arkansas Commission

on Law Enforcement Standards and Training requires that such a course be completed within one year of beginning employment. Childers was scheduled to attend the Arkansas Law Enforcement Training Academy in April 2006, the month after his termination (but within the required one year period under Arkansas law). It is undisputed that Childers received informal training on the job in the form of instructions, particularly from Sandine. Sandine had instructed Childers on several occasions on how to serve a warrant, including to make sure the warrant was valid and to make sure the person being arrested was the person named in the warrant. The parties dispute the adequacy of such training. The parties dispute the level of Childers's knowledge of "ten codes," which are used for radio communication, as another issue relating to the adequacy of his training. In his deposition, Childers testified that, while he "didn't know every one of them," he didn't have "much of a problem understanding it." Jones disputes this by showing that Childers identified a 10-29 as indicating a warrant, while the Stuttgart Policy Manual, which the defendants say was last revised in 1993, identifies that code as a check for stolen vehicle. In his affidavit, Smith also identified a 10-29 as a warrant check. The defendants assert that before December 20, 2005, Childers had served arrest warrants and never arrested the wrong person. Jones attempts to dispute this fact by saying that the only evidence of this is Childers's own memory, which Jones suggests is faulty based on his memory lapses about his termination and his ADHD condition.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla*

*v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

### III.

#### A.   SUPERVISORY LIABILITY

Jones claims that Smith and Sandine did not adequately train or supervise Childers. "[A] supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). There is no evidence that Smith or Sandine directly participated in a constitutional violation, so they may be held liable only if a failure properly to supervise and train caused Childers's unlawful arrest of Jones.

To prove inadequate training or supervision, the plaintiff must show that the supervisor was "deliberately indifferent" to or "tacitly authorized" the offending acts, which requires a showing that the supervisor had notice that the training and supervision were inadequate and likely to result in a constitutional violation. *Id.* A "single incident, or a series of isolated incidents," usually will not provide a sufficient "basis upon which to assign supervisory liability." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989). There is no evidence of any problem or incident with Childers or any other

officer in the Stuttgart Police Department serving arrest warrants that would put Smith or Sandine on notice that the training and supervision were inadequate and likely to result in a constitutional violation. It is undisputed that Sandine instructed Childers before he went to serve the arrest warrant that he make sure there was an active warrant and that he arrested the person described in the warrant. Moreover, Sandine attempted to contact Childers when he realized that Childers had identified the wrong person to arrest, which shows he was not "deliberately indifferent" to nor did he "tacitly authorize" Childers's unlawful arrest of Jones. Because Jones has presented no evidence showing that either Smith or Sandine had notice that inadequate training or supervision was likely to result in a constitutional violation, and no evidence that either was deliberately indifferent to or tacitly authorized the arrest of the wrong person, Smith and Sandine are entitled to summary judgment.

**B.    MUNICIPAL LIABILITY**

Jones also claims that the City of Stuttgart inadequately trained and supervised Childers, which resulted in a violation of Jones's constitutional rights. A city may be liable if a municipal policy or custom is the moving force behind the constitutional violation at issue, but it may not be held vicariously liable for an employee's unconstitutional actions under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). In a claim for inadequate training, the plaintiff must show: (1) the city's training practices are inadequate; (2) the city was "deliberately indifferent" to the rights of others in adopting them, such that the "'failure to train reflects a deliberate or conscious choice by a municipality;'" and (3) an alleged deficiency in the city's training or supervisory procedures actually caused the plaintiff's injury. *Andrews*, 98 F.3d at 1076 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d

412 (1989)). The municipal entity will be held liable if "'in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been indifferent to the need.'" *Id.* (quoting *Canton*, 489 U.S. at 390, 109 S. Ct. at 1205). A claim for inadequate supervision requires the same analysis. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998).

The deliberate indifference necessary to trigger municipal liability may be shown by a municipal entity's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees;" in other words, a pattern of tortious conduct by inadequately trained employees. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997). However, there may be occasions on which a single violation of federal rights, along with a showing that a municipal entity has inadequately trained its employees to handle recurring situations presenting an obvious potential for the violation, could lead to municipal liability. *Id.* at 409, 117 S. Ct. at 1391. The Supreme Court explained that "in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.*

There is no evidence of a pattern of tortious conduct of employees that would give the City of Stuttgart reason to believe their training of police officers is inadequate. The only violation of rights reflected in the facts is Childers's arrest of Jones. This single violation of rights is not a predictable consequence of inadequate training. It is undisputed that Childers had been instructed to make sure his warrant was valid and that he was arresting the person who was described in the

warrant moments before he mistook Jones for Keith Harris, the person described in the warrant. Jones cannot show that a deficiency in the City's training or supervisory procedures caused Childers to arrest him when the warrant was for Harris. Therefore, the City of Stuttgart is entitled to summary judgment.

## CONCLUSION

Jones has not met his burden of showing deliberate indifference by Sandine, Smith, or the City of Stuttgart and cannot make out a claim for inadequate training or supervision under § 1983. Sandine, Smith, and the City of Stuttgart are entitled to judgment as a matter of law. The motion for summary judgment is GRANTED. Document #30.

IT IS SO ORDERED this 23rd day of September, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE